| | |
|---|---|
| 1 | ARNOLD C. LAKIND |
|   | (alakind@szaferman.com) |
| 2 | SZAFERMAN, LAKIND, BLUMSTEIN, |
|   | BLADER & LEHMANN, P.C. |
| 3 | Quakerbridge Executive Center |
|   | 101 Grovers Mill Road, Suite 104 |
| 4 | Lawrenceville, New Jersey 08648 |
|   | Telephone: (609) 275 0400 |
| 5 | Facsimile: (609) 275-4511 |
| 6 | GREGORY E. KELLER (*Pro Hac Vice Admission to be Sought*) |
|   | (gkeller@chitwoodlaw.com) |
| 7 | DARREN T. KAPLAN (*Pro Hac Vice Admission to be Sought*) |
|   | (dkaplan@chitwoodlaw.com) |
| 8 | CHITWOOD HARLEY HARNES LLP |
|   | 2300 Promenade II |
| 9 | 1230 Peachtree Street, N.E. |
|   | Atlanta, Georgia 30309 |
| 10 | Telephone: (404) 873-3900 |
|   | Facsimile: (404) 876-4476 |
| 11 | |
| 12 | BRIAN S. KABATECK (*Pro Hac Vice Admission to be Sought*) |
|   | (bsk@kbklawyers.com) |
| 13 | RICHARD L. KELLNER (*Pro Hac Vice Admission to be Sought*) |
|   | (rlk@kbklawyers.com) |
| 14 | ALFREDO TORRIJOS (*Pro Hac Vice Admission to be Sought*) |
|   | (at@kbklawyers.com) |
| 15 | KABATECK BROWN KELLNER LLP |
|   | 644 South Figueroa Street |
| 16 | Los Angeles, California 90017 |
|   | Telephone: (213) 217-5000 |
| 17 | Facsimile: (213) 217-5010 |
| 18 | Attorneys for Plaintiff and the proposed class |

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Nathan Cooper, on Behalf of Himself and All Others Similarly Situated, | Case No. 07-03853 (JLL) (CCC) |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| Samsung Electronics America, Inc., a New York Corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

1   Plaintiff, Nathan Cooper residing at 4111 N. 21st Street #212, Phoenix, AZ
2   85016 ("Plaintiff"), individually and on behalf of the Class described below, by his
3   attorneys, makes the following allegations based upon information and belief,
4   except as to allegations specifically pertaining to Plaintiff and his counsel, which
5   are based on personal knowledge.  Plaintiff brings this action for damages and
6   injunctive relief against Defendant Samsung Electronics America, Inc. located at
7   105 Challenger Rd., Ridgefield Park, New Jersey 07660, demanding a trial by jury.

## NATURE OF THE ACTION

10   1.   Plaintiff brings this class action against Samsung Electronics
11   America, Inc. ("Samsung") to recover damages and other relief available at law
12   and in equity on behalf of himself as well as on behalf of the members of the
13   following class:

*All persons or entities located within the United States who purchased a Samsung television claimed to be "1080p" but which cannot accept digital 1080p signals from any currently available source.*

18   2.   Samsung has manufactured and marketed several models of high
19   definition televisions which Samsung advertised as being "1080p" televisions.
20   However, a number of the televisions Samsung marketed as being "1080p" are, in
21   fact, incapable of receiving a 1080p signal via the High-Definition Multimedia
22   Interface ("HDMI") or Digital Visual Interface ("DVI").  HDMI and DVI are the
23   only digital connections for any currently available native 1080p source.
24   3.   This action arises from the fact that Samsung advertised their high
25   definition televisions as being "1080p".  Consumers, such as Plaintiff, relying on
26   this assertion paid a premium price for a television capable of receiving a digital
27   1080p signal from future 1080p sources when, in fact, it could not.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## THE PARTIES

4. Plaintiff Nathan Cooper is a resident of Maricopa County, Arizona and has previously purchased a HL-R6178W high definition television from Samsung.

5. Plaintiff is informed and believes and thereon alleges that defendant Samsung Electronics America, Inc. ("Samsung") is a New York corporation doing business in the State of New Jersey. Samsung's corporate headquarters are located at 105 Challenger Rd., Ridgefield Park, New Jersey.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. section 1332, as amended in February 2005 by the Class Action Fairness Act. Jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; (2) there is complete diversity of citizenship between Plaintiff and Samsung; and (3) a substantial number of the members of the proposed class are citizens of a state different from defendant Samsung. In addition, this Court has original jurisdiction over the claims asserted herein under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*) pursuant to 15 U.S.C. § 2310(d)(1)(B).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) in that Samsung resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey.

## FACTUAL BACKGROUND

8. A "television" is a video display combined with an internal tuner to receive television broadcast signals. A "monitor" is a video display without an internal tuner. Television broadcast standards including the technical aspects of a

— 3 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

television signal are ultimately governed by the United States Federal Communications Commission ("FCC").

9. The Advanced Television Systems Committee, Inc. ("ATSC"), is an international organization which develops voluntary standards for digital television. ATSC member organizations are drawn from the broadcast, broadcast equipment, motion picture, consumer electronics, computer, cable, satellite, and semiconductor industries. On December 24, 1996, the FCC adopted the major elements of the ATSC Digital Television (DTV) Standard (A/53). (MM Docket No. 87-268) ATSC DTV standards include digital high definition television ("HDTV") as well as standard definition television ("SDTV") and designate the applicable standards for HDTV and SDTV as the standards of the Society of Motion Picture and Television Engineers ("SMPTE").

10. In the context of a video image or a video display such as a television, resolution is measured in "pixels." A pixel is the smallest part of a digitized image, with each pixel making up a very small part of the entire image. When all of the pixels are displayed in the correct position, a correct image is visible on the screen. The more pixels that are distributed vertically and horizontally across a video display, the greater the "resolution" or detail in the displayed image.

11. In addition to the number of pixels used, a video image is also characterized by its "aspect ratio" or its displayed width divided by its height. Thus, in describing a video image or display resolution, it is common to incorporate both the aspect ratio and the total pixels by describing a display or image as *the number of vertical pixels multiplied by the number of horizontal pixels*. Further, because the aspect ratio is standardized in certain common resolutions, both the public and the video broadcast and display industry frequently refer to the number of vertical pixels of a given image or display as shorthand for the resolution.

12. Finally, an image is scanned (i.e. "drawn") on a video display using

— 4 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

one of two methods. A "progressive" scan is a method of scanning images in which the lines of each frame are drawn in sequence, line by line, from top to bottom. In contrast, an "interlaced" scan displays an image by drawing every other line starting from the top left corner to the bottom right. A progressive scan produces a smoother, cleaner image than an interlaced scan, especially with sports and other motion-intensive content.

13. The ATSC DTV standards include a number of standards for HDTV but broadcasters in the United States currently broadcast HDTV using only two standards: 1280 x 720 resolution in a progressive scan ("720p") or 1920 x 1080 resolution in an interlaced scan ("1080i"). Thus, of the two standards, one offers a progressive scan (720p) while the other offers higher resolution (1080i).

14. Both HDTV resolutions are far superior to SDTV which is 640 x 480 resolution in either an interlaced or progressive scan (480i/480p) or even standard Digital Video Disk ("DVD") which is usually 720 x 480 in a progressive scan (480p).

15. The ATSC DTV standards also include a standard of 1920 x 1080 in a progressive scan ("1080p"), however, no broadcaster in the U.S. has ever indicated that it would consider broadcasting in 1080p, primarily due to bandwidth limitations. Nevertheless, the existence of the 1080p standard--combining the smoother progressive scan of 720p with the higher resolution of 1080i--has intrigued video enthusiasts since the adoption of the DTV standard in 1996.

16. HDTV television broadcasts in 720p and 1080i first began in 1999, and by 2004, all major networks were broadcasting at least some programming in HDTV. During the same period, sales of HDTV televisions and monitors grew explosively. Indeed, by 2004, prices on HDTV televisions and monitors actually began to decline as the market became saturated.

17. In 2005, television manufacturers began marketing so-called "1080p" televisions and monitors. These televisions and monitors had a native resolution of

FIRST AMENDED CLASS ACTION COMPLAINT

1920 x1080 and displayed using a progressive scan.

18. These so-called "1080p" televisions and monitors would "up-convert" SDTV, DVD and HDTV signals to 1080p for display. Up-conversion can result in some minor improvements in the image, but it does not make the native image any sharper because resolution can never be improved. Likewise, a native interlaced image will lack the smoothness and resolution of a native progressive image, even when displayed progressively through a process known as "de-interlacing".

19. At the same time that so-called "1080p" televisions and monitors were introduced, final preparations were underway to release sources that promised to actually provide native digital 1080p signals. These sources were two competing technologies each supported by a consortium of consumer electronics, information technology and media content companies. One such source was High Definition DVD ("HD-DVD"). Another source was Blu-ray Disc ("Blu-ray"). Samsung Electronics Co., Ltd., the parent company of defendant Samsung, was a founding member of the Blu-ray Disc Association and has a permanent seat on the Blu-ray Disc Association's Board of Directors.

20. Both the HD-DVD and Blu-ray consortiums worked closely with all major consumer electronics manufacturers including Samsung in developing the standards and technologies for their respective sources. In July and August of 2005, the HD-DVD and Blu-ray consortiums respectively announced that HD-DVD and Blu-ray players would only output digital 1080p signals via HDMI.

21. All Samsung so-called "1080p" televisions have an HDMI input, but many of Samsung's so-called "1080p" televisions *will not accept a 1080p signal from the HDMI input*. Further, so-called "1080p" televisions that do not accept a 1080p signals via HDMI cannot be upgraded to accept 1080p signals – that capability must be provided for in the initial design of the television or monitor circuitry and cannot be retrofitted.

22. Until the summer of 2006, *none of the televisions sold by Samsung*

FIRST AMENDED CLASS ACTION COMPLAINT

*were capable of accepting a 1080p signal from the HDMI input including Samsung's so-called "1080p" televisions.*

23. Despite the fact that Samsung knew that many of its so-called "1080p" televisions were incapable of accepting 1080p signals via HDMI, Samsung failed to fully disclose this fact in its advertising and marketing materials. The advertising and marketing materials published by Samsung would lead a reasonable reader, and did lead Plaintiff, to believe that Samsung's televisions could accept a digital 1080p signal.

24. Samsung sells high definition televisions throughout the United States.

25. Samsung marketed model numbers HL-R7178W, HL-R6178W, HL-R5678W, and HL-R5078W as "DLP TV by Samsung – 1080p HDTV." Samsung charged a significant premium for these models over conventional high definition televisions.

26. While Samsung's model number HL-R7178W, HL-R6178W, HL-R5678W, and HL-R5078W televisions apparently accept a 1080p signal via the Video Graphics Array ("VGA") input, this capability is completely meaningless in the context of a large rear-projection television such as Samsung's so-called "1080p" televisions because: (1) VGA represents obsolete analog technology that is an inherently inferior signal source for a digital television; (2) no native digital 1080p source can output digitally via VGA; (3) because of Digital Rights Management concerns, no future native digital 1080p sources will output via VGA; and (4) the only conceivable use for a VGA input would be for a personal computer monitor—an improbable use for a 50" to 71" rear-projection television.

27. Based on Samsung's marketing statements, a reasonable consumer would have no reason to suspect that a television labeled "1080p" and which is priced significantly above high definition televisions marketed only as "HDTV" would be incapable of receiving a 1080p signal from any available source capable

— 7 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

of delivering a digital 1080p signal.

28. Samsung's marketing and advertising materials encouraged consumers to purchase their so-called "1080p" televisions in large part to be prepared for the upcoming 1080p sources despite the fact that Samsung knew that its so-called "1080p" televisions would be, were, and are incapable of receiving digital 1080p signals from any sources of native 1080p available then, now, and for the foreseeable future.

29. Plaintiff Cooper purchased and owns a Samsung HL-R6178W high definition television. Plaintiff Cooper purchased his Samsung HL-R6178W television at an Ultimate Electronics store located in Maricopa County, Arizona sometime in October 2005.

30. Plaintiff Cooper purchased the Samsung HL-R6178W high definition television because he wanted a top of the line television capable of accepting digital 1080p signals from upcoming sources. Plaintiff and those similarly situated, relied upon the representations of Samsung that their televisions would accept a digital 1080p signal and those representations were a substantial factor in the decision to purchase a Samsung so-called "1080p" television

31. The model name for the Samsung HL-R6178W purchased by Plaintiff Cooper is the "628 Series 1080p DLP HDTV".

32. Plaintiff Cooper paid between $1,000 and $1,500 more for the Samsung HL-R6178W high definition television than for comparable high definition televisions that were not marketed as "1080p." A significant portion of the premium Plaintiff Cooper paid for his Samsung "1080p" television was for its supposed capability to accept digital 1080p signals from upcoming 1080p sources.

33. Plaintiff Cooper did not purchase his Samsung HL-R6178W high definition television for use as a personal computer monitor.

34. Plaintiff Cooper is informed and believes and thereon alleges that a portion of the funds expended on products manufactured by Samsung and

— 8 —
**FIRST AMENDED CLASS ACTION COMPLAINT**

purchased at the retail locations of Ultimate Electronics are ultimately returned back to Samsung through the chain of commerce.

35. Plaintiff Cooper owned his Samsung HL-R6178W high definition television for several months believing that it was capable of receiving a digital 1080p signal from a device capable of delivering a digital 1080p signal.

36. Only by unsuccessfully attempting to connect native 1080p devices did Plaintiff Cooper realize that the Samsung HL-R6178W high definition television he purchased lacked the capability to accept a digital 1080p signal for which he had paid a premium price.

37. At the time of purchase, Plaintiff Cooper did not know that the Samsung HL-R6178W high definition television would not accept a digital 1080p signal from any 1080p sources available then, now, and for the foreseeable future.

38. In May 2006, Samsung introduced a new 61" 1080p DLP Television model which it called the "HL-S6187W". The newer HL-S6187W had almost identical specifications and features as the older HL-R6178W purchased by Plaintiff Cooper with one notable exception—the newer HL-S6187W model accepted 1080p signals via HDMI.

39. While neither model of television is still sold in retail stores, refurbished models of the newer HL-S6187W and the older HL-R6178W are still sometimes available for sale to the public. A search of refurbished models of televisions for sale shows that a refurbished HL-R6178W (the model purchased by Plaintiff Cooper) sells for $999.99, while the HL-S6187W (the model which accepts 1080p via HDMI) sells for $1,349.99.

40. Thus, the loss in value to the Plaintiff and the Class between a so-called "1080p" DLP Television which does not accept 1080p via HDMI and a 1080p television which does accept 1080p via HDMI is $349 per television.

— 9 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

41. Description of the Class: Plaintiff brings this nationwide class action on behalf of himself and a Class defined as follows:

> *All persons or entities located within the United States who purchased a Samsung television claimed to be "1080p" but which cannot accept digital 1080p signals from any currently available source.*

42. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

43. Plaintiff and the Class bring this action for equitable, injunctive and declaratory relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of rule 23 of the Federal Rules of Civil Procedure.

44. Numerosity: The proposed Class is so numerous that individual joinder of all of its members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is at least in the tens of thousands and that the members of the class are geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

45. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect

individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a. Whether Samsung has failed to disclose to consumers the material fact that Samsung televisions marketed as "1080p" were incapable of accepting a digital 1080p signal from any available source;

    b. Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

    c. Whether Samsung engaged in unfair, fraudulent, and unconscionable conduct; and

    d. Whether Samsung failed to disclose material facts about the subject Samsung high definition televisions.

46. **Typicality:** Plaintiff's claims are typical of the claims of the members of the class. Plaintiff and all members of the class have been similarly affected by Defendant's common course of conduct.

47. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the Class.

48. **Superiority of a Class Action:** Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the

courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class. Furthermore, for many, if not most, class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

49. Adjudication of individual class members' claims with respect to the Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

## FIRST CAUSE OF ACTION
## UNJUST ENRICHMENT

50. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

51. Samsung has received money belonging to Plaintiff and the Class through the sale of so-called "1080p" televisions which were not capable of receiving digital 1080p signals from any available source.

52. As a direct and proximate result of Samsung's misconduct as set forth above, Samsung has been enriched at the expense of Plaintiff and the Class.

53. Under principles of equity and good conscience, Samsung should not be permitted to keep the full amount of funds it received from Plaintiff and the Class's purchase of Samsung's so-called "1080p" televisions.

54. Samsung should make restitution to Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

FIRST AMENDED CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

55. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

56. Samsung knew at all material times that its so-called "1080p" televisions lacked the capability of receiving digital 1080p signals from any available sources, yet marketed these televisions as "1080p".

57. These facts were not known to Plaintiff and the Class.

58. Samsung had a duty to disclose the above known material facts because Samsung knew that these material facts were unknown to Plaintiff and the Class, because Samsung was in a superior position of knowledge with regard to its own technology, and because Samsung chose to make certain representations that presented only a part of the true story and misled consumers about the subject products.

59. Samsung's knowledge that its so-called "1080p" televisions did not accept a digital 1080p signal from any available source, combined with Samsung's knowledge that Plaintiff and the Class reasonably relied upon Samsung to communicate the true state of facts relating to its high definition televisions, creates a legal obligation on Samsung's part to disclose to Plaintiff and the Class that its so-called "1080p" televisions do not accept digital 1080p signals from any available source.

60. Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

61. Samsung intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class and it was foreseeable to Samsung that Plaintiff and the Class would be misled by Samsung's concealment of the above facts.

**FIRST AMENDED CLASS ACTION COMPLAINT**

62. Samsung's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

63. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

64. There is an express warranty between Samsung as the manufacturer and Plaintiff and the Class. The express warranty was created by the Samsung's affirmations in its packaging and promotional materials that the television was 1080p. These statements were made by the seller prior to and at the time of sale, for the purpose of assuring the buyer of the truth of the facts affirmed.

65. The failure of Samsung's so-called "1080p" televisions to accept digital 1080p signals from any available source is a breach of the express warranty upon which Plaintiff and the class reasonably relied and which proximately caused plaintiff and the class's injury.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

66. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

67. There is an implied warranty between Samsung and the Plaintiff and the Class that televisions represented and advertised to be "1080p" will accept a digital 1080p signal from the only existing sources of a native 1080p signal.

68. Further, in various communications with the Plaintiff and the Class, Samsung alluded to these upcoming native digital 1080p sources as one of the

FIRST AMENDED CLASS ACTION COMPLAINT

principal reasons to purchase a Samsung so-called "1080p" television.

69.  The failure of Samsung's so-called "1080p" televisions to accept digital 1080p signals from any available 1080p source is a breach of the above implied warranty upon which Plaintiff and the class reasonably relied and which proximately caused Plaintiff and the class's injury.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF N.J.S.A. § 56:8-2

70.  Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

71.  Plaintiff has standing to pursue this claim as Plaintiff has suffered an ascertainable loss and actual injury as a result of Samsung's actions as delineated herein.

72.  Samsung is engaged in trade and commerce, and maintains its principal place of business, in the State of New Jersey.

73.  As discussed in the preceding paragraphs of this Complaint, Samsung has violated N.J.S.A. § 56:8-2 by engaging in unfair, fraudulent, and unconscionable conduct, including the following:

   a.  Marketing televisions as "1080p" when they are incapable of receiving a digital 1080p signal from any available source.

   b.  Misleading consumers with statements regarding the potential of their products to accept a 1080p signal when in fact the products could not be modified to accept a digital 1080p signal from any available source.

   c.  Failing to disclose the material fact that the televisions marketed as "1080p" were incapable of receiving a digital 1080p signal from any available source.

   d.  Charging consumers significantly more for a television

— 15 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

marketed as "1080p" than one not marketed as such when the television was incapable of accepting a digital 1080p signal from any available source.

74. As a proximate cause of Samsung's conduct, as alleged above, Plaintiff has suffered an ascertainable and actual loss for which he is entitled to legal and equitable relief, including treble damages.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. § 2310(d)(1)

75. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

76. Plaintiff and the vast majority of the members of the Class are "consumers" pursuant to 15 U.S.C. § 2301(3).

77. Samsung's so-called "1080p" televisions are "consumer products" pursuant to 15 U.S.C. § 2301(1).

78. Samsung is a "supplier" and "warrantor" pursuant to 15 U.S.C. § 2301(4) and (5) and has supplied a written warranty on the so-called "1080p" televisions to Plaintiff and the Class.

79. The failure of Samsung's so-called "1080p" televisions to accept digital 1080p signals from any available source is a failure by Samsung to comply with its obligations under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*) and under Samsung's written and implied warranties to the Plaintiff and the Class.

80. Plaintiff has afforded Samsung a reasonable opportunity to cure such failure to comply and at the time that Samsung was given such reasonable opportunity, the Plaintiff notified Samsung that he was acting on behalf of the Class.

81. Plaintiff and the Class have been damaged in an amount which is to

**FIRST AMENDED CLASS ACTION COMPLAINT**

be determined at trial, but is in excess of an aggregated amount of $5,000,000.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against the Defendant as follows:

1. Certification of the proposed class and notice thereto to be paid by Defendant;
2. Adjudge and decree that Defendant has engaged in the conduct alleged herein;
3. For restitution and disgorgement on certain causes of action;
4. For an injunction ordering Defendant to cease and desist from engaging in the unfair, fraudulent, and/or unconscionable practices alleged in the Complaint;
5. For compensatory, treble and punitive damages according to proof on certain causes of action;
6. For special damages according to proof on certain causes of action;
7. For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;
8. Costs of the proceedings herein;
9. Reasonable attorneys fees as allowed by statute; and
10. Any and all such other and further relief that this Court may deem just and proper.

Dated: January 7, 2008    SZAFERMAN, LAKIND, BLUMSTEIN, BLADER & LEHMANN, P.C.

By: _____
Arnold C. Lakind, Esq.

— 17 —

**FIRST AMENDED CLASS ACTION COMPLAINT**

*Counsel for Plaintiff and the class*

**CHITWOOD HARLEY HARNES LLP**
Gregory E. Keller (*Pro Hac Vice Admission to be Sought*)
Darren T. Kaplan (*Pro Hac Vice Admission to be Sought*)
*Counsel for Plaintiff and the class*

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck (*Pro Hac Vice Admission to be Sought*)
Richard L. Kellner (*Pro Hac Vice Admission to be Sought*)
*Counsel for Plaintiff and the class*

**FIRST AMENDED CLASS ACTION COMPLAINT**

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: January 7, 2008    **SZAFERMAN, LAKIND, BLUMSTEIN, BLADER & LEHMANN, P.C.**

By: _/s/ Arnold C. Lakind_
Arnold C. Lakind, Esq.
*Counsel for Plaintiff and the class*

**CHITWOOD HARLEY HARNES LLP**
Gregory E. Keller (*Pro Hac Vice Admission to be Sought*)
Darren T. Kaplan (*Pro Hac Vice Admission to be Sought*)
*Counsel for Plaintiff and the class*

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck (*Pro Hac Vice Admission to be Sought*)
Richard L. Kellner (*Pro Hac Vice Admission to be Sought*)
*Counsel for Plaintiff and the class*

**CLASS ACTION COMPLAINT**